**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DIANA VASCONEZ and MARTHA**
**VASCONEZ,**

                              **Plaintiffs,**

-vs-                                                    **Case No.  6:12-cv-236-Orl-31DAB**

**SHERIFF ROBERT E. "BOB" HANSELL**
**as Sheriff of the Osceola County Sheriff's**
**Office, Deputy JASON PARRAS,**
**individually and in his official capacity, and**
**Deputy ISRAEL YMA, individually and in**
**his official capacity,**

                              **Defendants.**

_____

## ORDER

        This matter comes before the Court without a hearing on the Motion to Dismiss Complaint

(Doc. 7) filed by the Defendants and the response (Doc. 9) filed by the Plaintiffs.

**I.      Background**

        According to the allegations of the Complaint (Doc. 9-1)[1] which are accepted as true for

purposes of resolving this motion to dismiss, Defendants Jason Parras ("Parras") and Israel Yma

("Yma") – both of whom were deputies with the Osceola County Sheriff's Office – were trying to

locate Byron Vasconez.  Byron Vasconez is the father of Plaintiff Diana Vasconez and husband of

Plaintiff Martha Vasconez.  Parras and Yma knocked on the door of the Plaintiffs' home, asking to

_____

        [1]The Complaint originally filed by the Plaintiffs appears at Doc. 1. However, the parties agree
that that version contains scrivener's errors and is missing at least one page.  A corrected version of
the Complaint was filed at Doc. 9-1, and the Court will treat that version as the operative pleading.

speak with Byron Vasconez.  Martha Vasconez answered the door, informed the deputies she

wished to get dressed and to call an attorney, and then closed the door.  The deputies forced their

way into the residence, assaulted both Plaintiffs, and arrested them.

On February 14, 2012, the Plaintiffs filed the instant suit.  In it, Diana Vasconez asserts the

following claims against Yma: a Section 1983 claim (Count I); a false arrest/imprisonment claim

(Count III); assault and battery claims (Count VI); and a malicious prosecution claim (Count IX).

Martha Vasconez asserts the same claims against Parras: a Section 1983 claim (Count II); a false

arrest/imprisonment claim (Count IV); assault and battery claims (Count VII); and a malicious

prosecution claim (Count X).  Both Plaintiffs assert the following claims against Defendant Robert

Hansell in his official capacity as Osceola County Sheriff: false arrest/imprisonment (Count V);

assault and battery (Count VIII); and negligent training and supervision (Count XI).  Finally, both

Plaintiffs assert a negligent infliction of emotional distress claim (Count XII) against all three

Defendants.

## II.      Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim

showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the

claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a

claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.

*Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the

Court must accept the factual allegations as true and construe the complaint in the light most

favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court

must also limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV.

P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the

speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the

required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not

prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint

need not contain detailed factual allegations, "but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

Id. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged - but it has not

'show[n]' - 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.     Analysis

### A.     Official capacity claims

The deputies have been sued in both their individual and official capacities. (Doc. 9-1 at 3-

4). Defendants point out that official capacity claims are actually suits against the deputies'

agency – in this case, the Osceola County Sheriff's Office. *See Kentucky v. Graham*, 473 U.S.

159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1978)). In regard to the federal claims, the

Plaintiffs argue that, because they have not sued the Sheriff himself or the Sheriff's Office under Section 1983, the Section 1983 official capacity claims against the deputies are not duplicative and therefore should not be dismissed.  However, though not duplicative, these official capacity claims are effectively claims against the Sheriff's Office.  It makes more sense and reduces the likelihood of confusion to have them pled as such.  Accordingly, the Section 1983 official capacity claims against the deputies will be dismissed without prejudice, and the Plaintiffs may replead them against the appropriate entity.

Unlike the situation with the Section 1983 claims, the Plaintiffs *have* raised state law claims against the Sheriff in his official capacity.  Under Florida law, the exclusive remedy for the Plaintiffs' state law claims is an action "against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).  Thus, the state law official capacity claims against the deputies will be dismissed with prejudice.  On the other hand, based on the allegations in the Complaint, a jury could find that the deputies acted in bad faith or maliciously.  Accordingly, the state law claims against the deputies in their individual capacities may proceed.

### B.    Fifth Amendment and Fourteenth Amendment

In counts I and II, the Plaintiffs assert Section 1983 claims under the Fourth, Fifth, and Fourteenth Amendments.  The Defendants argue that the parts of those counts asserting Fifth and Fourteenth Amendment claims should be dismissed because the type of conduct described in the Complaint is governed by the Fourth Amendment.  *See, e.g., Graham v. Connor*, 490 U.S. 386,

395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).  In their response, the Plaintiffs concede the

point.  Insofar as counts I and II assert Fifth or Fourteenth Amendment claims, those claims will be

dismissed with prejudice.

### C.    Negligence claims

Finally, the Defendants seek dismissal of the negligent training and supervision claim

asserted in Count XI against Defendant Hansell and the negligent infliction of emotional distress

claim asserted in Count XII against all three defendants.  The Defendants argue that the Plaintiffs

have failed to state a claim as to these two counts because they did not allege "an actionable duty

to a specific person" and because the claims are barred by sovereign immunity.

The Defendants' first point is based on the public duty doctrine exception to the state of

Florida's waiver of sovereign immunity.  Explaining that exception requires a bit of historical

background.  Generally speaking, sovereign immunity precludes suits against the state (and its

agencies and subdivisions) except where the state has given its consent.  Article X, section 13 of

the Florida Constitution gives the Florida Legislature the authority to provide such consent, which

it did in regard to tort claims by enacting Florida Statute § 768.28.  That statute provides, in

pertinent part, that

> the state, for itself and for its agencies or subdivisions, hereby waives sovereign
> immunity for liability for torts, but only to the extent specified in this act. Actions at
> law against the state or any of its agencies or subdivisions to recover damages in tort
> for money damages against the state or its agencies or subdivisions for injury or loss
> of property, personal injury, or death caused by the negligent or wrongful act or
> omission of any employee of the agency or subdivision while acting within the
> scope of the employee's office or employment under circumstances in which the
> state or such agency or subdivision, if a private person, would be liable to the
> claimant, in accordance with the general laws of this state, may be prosecuted
> subject to the limitations specified in this act.

Fla. Stat. § 768.28(1).  Although this language appears to make the state's potential tort liability

coextensive with that of a private person, the matter is not that simple.  A line of Florida cases has

held that the state faces no liability for breach of a duty owed to the public as a whole, rather than

to the plaintiff in particular.  *See, e.g., Gordon v. City of West Palm Beach*, 321 So. 2d 78, 80 (Fla.

3d DCA 1975) (stating municipality can only be liable for actions of officer if officer owed

claimant a duty that was different from the duty he owed to any member of the public).  A

somewhat different way of describing this so-called "public duty doctrine" is that "there can be no

governmental liability unless a common law or statutory duty of care existed that would have been

applicable to an individual under similar circumstances."  *Kaisner v. Kolb*, 543 So. 2d 732, 734

(Fla. 1989).

However, in *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir. 2001), the United

States Court of Appeals for the Eleventh Circuit held that the public duty doctrine had not survived

the enactment of Fla. Stat. § 768.28.  *Id.* at 1265-66 (finding that trial court erred in dismissing tort

claim based on public duty doctrine).  It does not appear that this is an accurate assessment of

Florida law; in the wake of *Lewis*, Florida courts continue to discuss and apply the public duty

doctrine.  *Wallace v. Dean*, 3 So. 3d 1035, 1044 n.13 (Fla. 2009) (describing duty analysis required

to determine governmental tort liability under Florida law and stating that the analysis may

include, when relevant, "examination of the so-called public-duty doctrine and its recognized

exceptions.").  But the Eleventh Circuit's interpretation of Florida law is just as authoritative as its

interpretation of Federal law, *Newell v. Harold Shaffer Leasing Co., Inc.*, 489 F.2d 103, 107 (5th

Cir. 1974)[2], and this Court is bound to follow it.  Insofar as the motion seeks dismissal based on

the public duty doctrine, it will be denied.

The *Lewis* court ultimately decided that the plaintiff's negligent training claim was barred

by the doctrine of sovereign immunity.  Specifically, the court found that the allegedly wrongful

acts were discretionary governmental functions which, by their nature, were "immune from tort

liability".  *Lewis* at 1266.  In so doing, the court stated

> Lewis does not challenge the implementation or operation of the City's police
> training program as it relates to the officers involved in the shooting, but rather
> Lewis challenges the City's policy decisions regarding what to include in the
> training of its police officers.  A city's decision regarding how to train its officers
> and what subject matter to include in the training is clearly an exercise of
> governmental discretion regarding fundamental questions of policy and planning.
> Because Lewis challenges the reasonableness of basic policy decisions made by the
> City, the "discretionary" function exception to the waiver of sovereign immunity
> applies and her claim is barred.

*Id.*  The Defendants argue that this same rationale applies in this case, and the Plaintiffs' claims in

Counts XI and XII are therefore barred by sovereign immunity.  However, the discretionary

function exception would not appear to apply to a negligent infliction of emotional distress claim,

such as the one set forth in Count XII, or to the negligent supervision claims set forth in Count XI,

and the Defendant makes no effort to show that it does.  Accordingly, the motion will be denied as

to those claims.  Moreover, as to the remaining negligent supervision claim, the *Lewis* court was

not announcing a *per se* rule that all such claims against police departments are barred by the

discretionary function exception.  The *Lewis* court was careful to note that the plaintiff in its case

---

[2]All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on
courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.
1981).

was challenging "the City's policy decisions." *Id.* In this case the Plaintiffs refer specifically to the training provided to Defendants Yma and Perez. (Doc. 9-1 at 22). As such, at least at this stage of the proceedings, the training allegations appear to fall outside the discretionary function exception. *See also Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (in regard to state law negligent training claim, stating that "Because Mercado only challenges the content of the [training] program, not the way in which the program was implemented, Orlando is entitled to sovereign immunity with respect to this claim.").

But that is not the end of the story. In this Court, the issue of negligent training usually arises in connection with an attempt to impose liability under Section 1983 upon a government entity for the constitutional torts committed by its employees or agents. *See, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (stating that "there are limited circumstances in which an allegation of 'failure to train' can be the basis for [municipal] liability under Section 1983.").

With respect to state law claims against government entities, however, negligent training seems superfluous. Suppose, for example, that a deputy commits a tort while acting within the scope of his or her office. Under Fla. Stat. § 768.28(9), the sheriff's department is automatically liable for the tort, unless it was committed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." In the former case, obviously, there is no need to assess the deputy's training, as the department is on the hook no matter what sort of training was provided. In the latter case, holding the department liable under a negligent training theory would appear to contravene Fla. Stat. § 768.28(9), which provides that the government "shall not be liable in tort for the acts or omissions of an officer, employee, or

agent ... committed in bad faith or with malicious purpose or in a manner exhibiting willful disregard of human rights, safety, or property."[3]  Because the parties have not briefed the issue of whether there are any circumstances under which such a cause of action can be viable, the Court will not decide the issue now.  However, the Court may require that the issue be addressed prior to trial.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss Complaint (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**.  The Section 1983 claims against the Deputies in their official capacities are **DISMISSED** with leave to replead against the appropriate entity.  The state law claims against the Deputies in their official capacities are **DISMISSED WITH PREJUDICE**.  To the extent the Plaintiffs have raised claims under the Fifth or Fourteenth Amendments to the United States Constitution, those claims are **DISMISSED WITH PREJUDICE**.  In all other respects, the motion is **DENIED**.  The Plaintiffs may file an amended complaint that includes the repled Section 1983 claims on or before May 18, 2012.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 8, 2012.

_____
GREGORY A. PRESNELL
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

---

[3]*See also Miami-Dade County v. Cardoso*, 922 So. 2d 301, 302 (3d DCA 2006) (Schwartz, J., concurring) (stating belief that jury award should have been overturned because "'negligent training' is not, as a matter of law, a distinct theory of liability for compensatory damages which can form the basis of a separate award" and citing cases).

Counsel of Record
Unrepresented Party