## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**DIANA VASCONEZ and MARTHA VASCONEZ,**

     **Plaintiffs,**

**v.**                 **Case No:  6:12-cv-236-Orl-31DAB**

**ROBERT (BOB) E. HANSELL, JASON PARRAS, ISREAL YMA,**

     **Defendants.**

_____

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 31) filed by the Defendants, the response in opposition (Doc. 49) filed by the Plaintiffs, and the reply (Doc. 52) filed by the Defendants.

### I.  Background

Defendant Robert Hansell ("Hansell") is the Sheriff of Osceola County.  He is sued in his official capacity, and the claims against him are understood to be claims against the Osceola County Sheriff's Office.  Defendants Jason Parras ("Parras") and Isreal Yma ("Yma") are Osceola County Deputy Sheriffs.  On December 9, 2010, they sought to arrest Byron Vasconez, who was wanted on a felony battery charge, at his house.  Upon their arrival, the deputies encountered his daughter, Diana Vasconez, and his wife, Martha Vasconez, both of whom also resided there.  A fracas ensued.  The Plaintiffs contend that the deputies, without justification, forced their way into the residence and assaulted them.  The deputies contend that they were forced to restrain the Plaintiffs because they tried to interfere with the arrest of Byron Vasconez.

The Plaintiffs were arrested on charges of battery on a law enforcement officer and resisting arrest without violence.   In January 2011, the State Attorney's Office notified both Plaintiffs that it had opted not to prosecute.   On February 14, 2012, the Plaintiffs filed the instant case.   In their Amended Complaint (Doc. 17), they assert claims for unreasonable search and seizure pursuant to 42 U.S.C. § 1983 against the Sheriff's Office (Count I), Yma (Count II), and Parras (Count III).   The Plaintiffs also asserted the following state law claims: false arrest/imprisonment against Yma (Count IV), Parras (Count V), and the Sheriff's Office (Count VI); assault and battery against Yma (Count VII), Parras (Count VIII), and the Sheriff's Office (Count IX); malicious prosecution against Yma (Count X) and Parras (Count XI); negligent training against the Sheriff's Office (Count XII); and negligent infliction of emotional distress against all three Defendants (Count XIII).

## II.    Legal Standards

### A.    Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56(c).   Which facts are material depends on the substantive law applicable to the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists.   *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted).  Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

**B.**     **Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).  Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  Once the defendants establish this, the burden shifts to the plaintiffs to show that qualified immunity is

not appropriate.  *Id.*   The Supreme Court has established a two-part test to determine whether qualified immunity should apply.  The court must determine whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002).  This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.  *Gonzalez*, 325 F.3d at 1234.  The second prong of the test requires the court to determine whether the right was "clearly established."  *Id.*  Although it will often be appropriate to consider whether a constitutional violation has been alleged before assessing whether the right at issue is clearly established, the two determinations may be made in either order.  *Pearson v. Callahan*, 555 U.S. 223, —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

### III.    Analysis

### A.    The Plaintiffs' Testimony

In their depositions, both Plaintiffs told essentially the same story regarding the events of December 9, 2010.   They testified that they were in their bedrooms[1] when the Deputies, accompanied by two Haines City police officers, knocked on the front door.  (Doc. 36 at 39, Doc. 37 at 17).  Diana Vasconez answered the door, Martha Vasconez subsequently joined her, and the Deputies asked to speak with Byron Vasconez.  (Doc. 36 at 43, Doc. 37 at 20).  Even when asked, the Deputies did not inform the Plaintiffs that they had an arrest warrant for Byron Vasconez or that they planned to arrest him.  (Doc. 36 at 43, Doc. 37 at 20).

The Plaintiffs say Martha Vasconez asked for and received permission from the Deputies to close the front door.  (Doc. 36 at 44-45, Doc. 37 at 25).  Shortly after Martha Vasconez closed

---

[1] The Plaintiffs also testified that Byron Vasconez was asleep in the bedroom with Martha Vasconez when the Deputies knocked on the door, and that he slept through the initial portion of the encounter.

the front door, the Deputies began beating on it.  (Doc. 36 at 57, Doc. 37 at 25).  Diana Vasconez, who had been on the phone with a lawyer, hung up and opened the door because the Deputies "were starting to destroy" it.  (Doc. 36 at 58).  As she opened the door, Deputy Yma grabbed her arm, yanking it repeatedly, then put her in a chokehold and pulled his gun on her.  (Doc. 36 at 58-60, Doc. 37 at 26-27).  Deputy Parras hit Martha Vasconez in the chest and threw her to the ground.  (Doc. 37 at 28, 31-32).

As a result of the Deputies' actions, the Plaintiffs say, Diana Vasconez suffered nerve damage to her arm and a broken nose (Doc. 36 at 72) and Martha Vasconez suffers from recurrent muscle pain (Doc. 37 at 39).  Both Plaintiffs also testified that they suffer from insomnia and mental health issues as a result of the Deputies' conduct.  (Doc. 36 at 72, Doc. 37 at 41-42). Finally, the Plaintiffs testified that they did not intentionally touch any of the officers or resist them prior to their arrests for battery on a law enforcement officer and resisting arrest without violence.  (Doc. 36 at 87; Doc. 37 at 56-57).

### B.     Qualified Immunity

The Deputies contend that they are entitled to qualified immunity, as their actions did not violate any of the Plaintiffs' clearly established rights.  The Plaintiffs argue that the Deputies' conduct violated their Fourth Amendment rights to be free from unreasonable searches and seizures in three different ways – by improperly entering their residence, by arresting them without probable cause, and by using excessive force to do so.

It is not disputed that the Deputies were acting within their discretionary authority when they sought to arrest Byron Vasconez.  Accordingly, to avoid summary judgment on qualified immunity grounds, the Plaintiffs must demonstrate the existence of a genuine issue of material fact as to whether the Deputies violated a clearly established right.

The entry

Though they deny being informed of its existence, the Plaintiffs do not dispute that the Deputies actually had an arrest warrant for Byron Vasconez on the day in question.[2]   A copy of the warrant is attached to the instant motion.  (Doc. 31-1).  For Fourth Amendment purposes, such a warrant "implicitly carries with it a limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388, 63 L. Ed. 2d 639 (1980).  The Deputies rely heavily on this warrant, and testimony from Defendant Parras that he saw Byron Vasconez through the window as the Deputies approached the house, to demonstrate that they did not violate anyone's Fourth Amendment rights by entering the Vasconez residence.

However, while there are exceptions, generally speaking the Fourth Amendment requires that police officers "knock and announce" – *i.e.,* identify themselves and request admission – before forcing their way into a residence.  *Wilson v. Arkansas*, 514 U.S. 927, 931-36 (1995).  Even where officers possess appropriate warrants, "a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement."  *Id.* at 936.  In this case, the Plaintiffs testified that the Deputies (1) did not inform them of the warrant or otherwise announce their intention to arrest Byron Vasconez and (2) did not request admission before they began forcing their way into the house.  The Deputies argue that the Plaintiffs' story makes no sense -- that there would be no reason for them to fail to tell the Plaintiffs about the arrest warrant or to give the Plaintiffs permission to close the door with a suspected felon on the other side.  At this stage of the proceedings, however, the Court is required to credit the Plaintiffs' testimony,

---

[2] The Plaintiffs also do not dispute that Byron Vasconez lived with them.

which is enough to create an issue of material fact as to whether the Deputies violated the Plaintiffs' Fourth Amendment rights when they entered the house.

<u>Arrest of the Plaintiffs</u>

A warrantless arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of the arrest constitutes an absolute bar to a Section 1983 action for false arrest. *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009). In addition, qualified immunity protects officers who reasonably but mistakenly conclude that probable cause is present. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009). Whether a particular set of facts gives rise to probable cause or arguable cause for arrest depends on the elements of the crime. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Where the facts are undisputed, whether probable cause existed is a question of law. *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

The Deputies contend that they are entitled to summary judgment because they possessed probable cause to arrest the Plaintiffs for battery on a law enforcement officer in violation of Fla. Stat. § 784.07(2)(b) and resisting arrest without violence in violation of Fla. Stat. § 843.02. However, the Plaintiffs testified that they were never told that the Deputies were there to arrest Byron Vasconez, that they never attempted to interfere with such an arrest, and that they never intentionally touched the Deputies. Crediting this testimony, as the Court is obligated to do at this stage, the Deputies did not have probable cause (or even arguable probable cause) to arrest the Plaintiffs on either of those charges.

<u>Excessive Force</u>

The Deputies argue that physical evidence refutes the Plaintiffs' claims that they were the victims of excessive force. Specifically, the Deputies contend that objective evidence such as

booking photos showing mere bruising and jail intake forms (signed by the Plaintiffs) indicating no injuries show that no more than *de minimis* force was used in arresting the Plaintiffs.  Again, however, if one credits the Plaintiffs' testimony, the Deputies lacked probable cause to make an arrest.  Even *de minimis* force will violate the Fourth Amendment if an officer is not entitled to arrest or detain the person upon whom force was used.  *Zivojinovich v. Barner*, 525 F.3d 1059, 1071 (11th Cir. 2008).  Moreover, while the evidence relied upon by the Deputies suggests that the Plaintiffs' injuries were comparatively minor, that evidence does not necessarily rule out more severe injuries, and that evidence is contradicted by the testimony of the Plaintiffs.   Accordingly, a genuine issue of material fact exists as to the amount of force employed by the Deputies.

<u>Inadequate Training</u>

The Plaintiffs contend that Sheriff Hansell, in his official capacity, should be held liable under Section 1983 for policies or customs of inadequate screening, training, and supervision, which caused injuries to the Plaintiffs.  Hansell contends that they Plaintiffs have not produced any evidence of such policies or customs.   The Plaintiffs do not respond to this argument.  Accordingly, Hansell is entitled to summary judgment on the Section 1983 claim.

**C.     State Law Claims**

<u>False Arrest/Imprisonment and Malicious Prosecution</u>

Under Florida law, the existence of probable cause bars a claim for false arrest, false imprisonment, or malicious prosecution.  *Von Stein v. Brescher*, 904 F.2d 572, 584 n. 19 (11th Cir. 1990).  The Defendants seek summary judgment on these claims on the grounds that the Deputies possessed probable cause to arrest the Plaintiffs.  As detailed above, a genuine issue of material fact remains as to whether the Deputies did possess probable cause.  Therefore, the Defendants are not entitled to summary judgment on these counts.

Assault and Battery

The Defendants argue that they are entitled to summary judgment on these claims based on the same arguments put forth in regard to the Section 1983 excessive force claims – *i.e.*, that the evidence shows that the arrests were lawful and the amount of force employed was not excessive. As with the excessive force claims, however, if one credits the Plaintiffs' testimony, the arrests were improper and resulted in serious injury. Summary judgment will be denied as to these counts.

Negligent Infliction of Emotional Distress

As a general rule under Florida law, for a plaintiff to recover damages for emotional distress caused by the negligence of another, the emotional distress must flow from physical injuries the plaintiff sustained by way of an impact. *See, e.g.*, *Reynolds v. State Farm Mut. Auto. Ins. Co.*, 611 So. 2d 1294, 1296 (Fla. 4th DCA 1992), *rev. den.*, 623 So. 2d 494 (Fla. 1993). This so-called "impact rule" has at least one exception: Even in the absence of an impact, people who suffer a physical injury as a result of emotional distress arising from their witnessing the death or injury of a loved one may maintain a cause of action for negligent infliction of emotional distress. *Champion v. Gray*, 478 So. 2d 17 (Fla. 1985). The Defendants argue that the Plaintiffs have not even claimed to have a physical manifestation of a psychological injury.

According to her testimony, however, Diana Vasconez was attacked and suffered physical injuries. Therefore, at least in regard to emotional distress flowing from her own injuries, the impact rule does not bar her claim at this stage of the proceedings. On the other hand, Martha Vasconez does not make such an argument in regard to emotional distress flowing from any impact she may have suffered, and therefore any such claim she might have asserted is barred.

Both Plaintiffs also argue that they have provided evidence of physical manifestations of their emotional distress at witnessing injuries to their family members caused by the Defendants: Martha Vasconez testified that she suffers from insomnia, headaches, fear of law enforcement officers, paranoia and nightmares, and Diana Vasconez testified that she suffers from fear of law enforcement officers, depression, pain, sleeping disorders and nightmares.  However, these conditions are not enough to satisfy the *Champion* exception to the impact rule.  To qualify for the *Champion* exception, the psychological trauma must cause "a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment." *Brown v. Cadillac Motor Car Division*, 468 So. 2d 903, 904 (Fla. 1985).  The Defendants are entitled to summary judgment as to the Plaintiffs' claims of emotional distress resulting from witnessing injury to their family members.

<u>Negligent Training</u>

Hansell argues that the Plaintiffs have failed to present any evidence of insufficient training or supervision by the Sheriff's Office.  The Plaintiffs do not respond to this argument. Accordingly, the Sheriff is entitled to summary judgment as to the Plaintiffs' state law claims based on negligent training or supervision.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 31) filed by the Defendants is **GRANTED IN PART AND DENIED IN PART** as set forth above.  Summary judgment is granted as to all of the claims against the Sheriff's Office and as to all of the claims of negligent

infliction of emotional distress aside from Diana Vasconez's claim arising from her own injuries.

In all other respects, the motion is denied.

      **DONE** and **ORDERED** in Orlando, Florida on May 13, 2013.

                                **GREGORY A. PRESNELL**
                            **UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Parties